IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SARIF BIOMEDICAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-846 (LPS) |
| | ) | |
| BRAINLAB, INC.; BRAINLAB AG; | ) | |
| BRAINLAB MEDIZINISCHE | ) | |
| COMPUTERSYSTEME GMBH; VARIAN | ) | |
| MEDICAL SYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**BRAINLAB'S OPENING BRIEF
IN SUPPORT OT ITS MOTION FOR ATTORNEYS' FEES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mnoreika@mnat.com

*Attorneys for Brainlab Inc.,
Brainlab AG and Brainlab Medizinische
Computersysteme GmbH*

OF COUNSEL:

Jay R. Campbell
Joshua M. Ryland
TUCKER ELLIS LLP
950 Main Ave., Suite 1100
Cleveland, OH 44113
(216) 696-5639

October 19, 2015

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .............................................................................................................1

II.  BACKGROUND ..............................................................................................................2

    A.  Sarif sues several parties for infringement ............................................................2

    B.  The Patent Office found claims 1 through 9 of the '725 patent indefinite and claims 10 and 11 likely invalid over the prior art............................3

    C.  Sarif's multiple different constructions of element (e) demonstrate both the frivolity of its case and that it unreasonably litigated the case..........................................................................................................................5

        1.  Sarif's *first* construction of element (e) was software running the algorithm at col. 10, lines 53-56 of the '725 patent. ....................................................................................................5

        2.  Sarif's *second* construction of element (e) was mutually exclusive to its first construction..............................................................6

        3.  Sarif's *third* construction of element (e) added additional algorithms not in its second construction. ..................................................6

        4.  Sarif in its Answering Brief asserted a *fourth* construction that defined "determining" to require active control of the tool. ..........................................................................................................8

        5.  Sarif's expert testified at the claim construction hearing to a *fifth* claim construction for element (e), and Sarif withdrew its argument that element required an "active" step of directing movements....................................................................................8

    D.  The Court determined element (e) was indefinite ................................................9

III.  ARGUMENT ..................................................................................................................10

    A.  Legal Standard .....................................................................................................10

    B.  This case is exceptional warranting an award of attorneys' fees under 35 U.S.C. § 285. ......................................................................................11

        1.  The substantive strength of Sarif's case was very weak............................11

            a.  Sarif could not have performed a legitimate pre-filing investigation without knowing claim 1 was nonsensical. ...............................................................................11

b.   Sarif could not have had a reasonable basis to believe that the Patent Office erred in finding that element (e) of claim 1 is indefinite. ............................................... 12

2.   Sarif litigated this case in an unreasonable manner. ............................... 15

a.   Sarif's ever shifting claim construction theories demonstrate Sarif's litigation misconduct. .................................... 15

b.   The fact that Sarif prosecuted this action as part of a predatory strategy to extract a nuisance settlement indicates that Sarif's litigation conduct was unreasonable. ............................................................................. 16

C.   At this time, the Court need only determine whether Sarif is liable for Brainlab's attorneys' fees. ............................................................................ 18

IV.   CONCLUSION .......................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>CASES</u>

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014) ...........................................................................15

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*,
   79 F. Supp. 3d. 1111 (C.D. Cal. 2015).................................................................10

*CCS Fitness, Inc. v. Brunswick Corp.*,
   288 F. 3d 1359 (Fed. Cir. 2002)...........................................................................12

*Chalumeau Power Sys. LLC v. Alcatel-Lucent*,
   No. 11-1175-RGA, 2014 WL 4675002 (D. Del. Sept. 12, 2014)...........................17

Enzo Biochem, Inc. v. Applera Corp.,
   599 F.3d 1325 (Fed. Cir. 2010) .............................................................................4

*Gevo, Inc. v. Butamax Advanced Biofuels LLC*,
   No. 13-576-SLR, 2014 WL 4247735 (D. Del. Aug. 26, 2014).............................17

*GP Indus. Inc. v. Eran Indus., Inc.*,
   500 F.3d 1369 (Fed. Cir. 2007) ...........................................................................11

In re Aoyama,
   656 F.3d 1293 (Fed. Cir. 2011) .............................................................................4

*JS Prods., Inc. v. Kabo Tool Co.*,
   No. 2:11–cv–01856 RCJ, 2014 WL 7336063, at *4 (D. Nev. Dec. 22, 2014).........................11

*Kilopass Tech. Inc. v. Sidense Corp.*,
   No. C 10-02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014) ................. 15, 16

*LendingTree, LLC v. Zillow, Inc.*,
   No. 10-00439-FDW-DCK, 2014 WL 5147551 (W.D.N.C. Oct. 9, 2014).............17

*Lumen View Technology, LLC v. Findthebest.com, Inc.*,
   63 F. Supp. 3d 321 (S.D.N.Y. 2014)................................................. 16, 17, 18

*Nat. Merchant Center, Inc. v. Medianet Group Techs., Inc.*,
   893 F. Supp. 2d 1054 (C.D. Cal. 2012).................................................................18

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   134 S.Ct 2120 (2014) .....................................................................................4, 15

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014) ................................................................................. 10, 11

*Read Corp. v. Portec, Inc.*,
    970 F. 2d 816 (Fed. Cir. 1992) ............................................................................................11

*Segan LLC v. Zynga Inc.*,
    __ F. Supp. 3d __, No. 14-cv-01315-VC,  2015 WL 5315945 (N.D. Cal. Sept. 10, 2015)......19

*Summit Data Sys., LLC v. EMC Corp.*,
    No. 10-749-GMS, 2014 WL 4955689 (D. Del. Sept. 25, 2014) ............................................16

## STATUTES

35 U.S.C. § 112, ¶ 2 ............................................................................................................10

35 U.S.C. § 285.............................................................................................................2, 10

## RULES

Federal Rule of Civil Procedure Rule 54(d)(2)(C) ............................................................10, 18

## I.     INTRODUCTION

Sarif pushed an infringement case for **two years** and **demanded millions in license fees** on a patent claim that was both nonsensical and indefinite.  It not only knew the asserted patent was weak before filing this case, but Sarif continued to litigate when every objective guidepost— including a ruling from the Patent Office—confirmed the case should be dismissed.  As the Supreme Court held in *Octane Fitness*, an exceptional case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  In this case, both reasons describe Sarif's tactics and make this case exceptional under § 285.

Since 2013, Sarif:

- filed suit on a patent that its previous owner (Medtronic) **declined to assert against Brainlab** despite being in the middle of a contentious patent suit;

- **ignored** Brainlab's discovery responses, *inter partes* review ("IPR") request, and claim construction briefing stating that patent was indefinite and frivolously asserted;

- **declined to dismiss this case** even after the Patent Office made clear **the asserted patent was indefinite**; and

- proceeded to spin the Patent Office ruling as a win and **change its claim construction multiple times** to prolong this case through claim construction.

Brainlab is keenly aware that "exceptional" does not simply mean any case in which it prevails.  Here, however, Sarif forced years of litigation, ignored an overwhelmingly negative IPR result, and changed its claim construction for a single term five times in a strategy designed

to coerce a settlement. This indifference to the Court's resources, Brainlab's litigation expenses, and the weakness of its case is—in a word—*exceptional*. Accordingly, the Court should grant Brainlab's motion and declare this case exceptional under 35 U.S.C. §285.

## II.    BACKGROUND

Unlike most § 285 determinations, this case presents a unique opportunity to compare reasonable and unreasonable litigation conduct with respect to the *same patent*. Sarif's patent is not new and neither are the Brainlab products accused of infringement. Despite the fact that both the patent and products at issue have been in play for years, the previous owner of the '725 patent never asserted it against Brainlab—and for good reason.

In 1999, Medtronic acquired the '725 patent along with others to assert as part of a bitter patent litigation with Brainlab in the District of Colorado (*Surgical Navigation Technologies v. Brainlab*, 98-cv-1072). While that case lasted over ten years, involved patent allegations against both parties, and was a very high profile case in the burgeoning surgical navigation industry, Medtronic never once asserted the '725 patent. To be sure, Medtronic had ample time and motivation to do so, but it likely appreciated exactly what Sarif forced this Court to confirm—the claims of the '725 patent are indefinite and invalid.

### A.    Sarif sues several parties for infringement

Despite this litmus test, Sarif—a non-practicing entity—purchased the '725 patent from Medtronic in late 2012. In 2013, Sarif sued Brainlab, Varian Medical Systems, Accuray, and Siemens Medical Solutions for infringement. It is unclear how Sarif construed the '725 patent in order to make its infringement assertions, given that element (e) of claim 1 is inconsistent with the subject matter described in the patent.

Element (e) of claim 1 requires a "means for determining coordinates of the tool in the fixed reference system $R_c$ *based on data from the image data base*." '725 patent, col. 11:18-20

(emphasis added) (D.I. 1-1).  The '725 patent, however, does not describe a system that works that way.  The patent describes a system that finds the coordinates of the tool using a pair of cameras—not an image database:

> Advantageously, **the means for determining the coordinates of the tool in said fixed reference system R$_c$ are constituted by at least two acquisition cameras** integral with the fixed reference system R$_c$ and positioned such that their field of observation contains the mobility space of the tool.

'725 Patent, col. 3:39-43.

Brainlab in fact asserted that the claims of the '725 patent are indefinite as early as its Answer. D.I. 18 ¶ 20.

**B.      The Patent Office found claims 1 through 9 of the '725 patent indefinite and claims 10 and 11 likely invalid over the prior art.**

Because Sarif continued to press its case, Brainlab and co-defendant Varian filed an IPR request.  Brainlab argued that claims 1 through 9 of the '725 patent are invalid because element (e) of claim 1 is indefinite and therefore cannot be construed.[1]  *See* IPR Decision, p. 8 (D.I. 62-1) (citing IPR Request, p. 24.).  Brainlab also argued that the remaining claims of the '725 patent, claims 10 and 11 are invalid over the prior art.

The Patent Office agreed that claims 1 through 9 are indefinite because the '725 patent did not disclose any structure for determining the coordinates of the tool based on the image data base:

> ***Because there is nothing in the specification that clearly links or associates an algorithm or software with determining the coordinates of the tool in the fixed reference frame based on data from the image data base***, there is no disclosed corresponding structure for the "means for determining coordinates of the tool in the

---

[1]      Claims 2-9 all depend from claim 1 either directly or indirectly and therefore are invalid if claim 1 is invalid.

> fixed reference system Rc based on data from the image data base" as recited in claim
> 1. For these reasons, we determine that the recitation "means for determining
> coordinates of the tool in the fixed reference frame Rc based on data from the image
> data base" cannot be construed. See In re Aoyama, 656 F.3d 1293, 1298 (Fed. Cir.
> 2011) (quoting Enzo Biochem, Inc. v. Applera Corp., 599 F.3d 1325, 1332 (Fed. Cir.
> 2010) ("If a claim is indefinite, the claim, by definition, cannot be construed.")).

IPR Decision, p. 11 (emphasis added) (D.I. 62-1). An indefinite claim is invalid. *Nautilus, Inc.*

*v. Biosig Instruments, Inc.,* 134 S.Ct 2120, 2125 (2014). The Patent Office also agreed that

claims 10 and 11 were likely invalid. *Id.* at 18.

Because it determined that claims 1 though 9 are indefinite, the Patent Office instituted

*inter partes* review of claims 10 and 11 only.[2]  *Id.* at 12. Rather than argue that claims 10 and 11

are valid, Sarif admitted to the invalidity of these claims thus ending the IPR process.

Any reasonable patentee would find the Patent Office's decision a more than adequate

reason to dismiss its suit. The owner of Sarif, however, remarkably stated it was "pleased" with

the decision as it could still pursue licensing negotiations with the defendants in its remaining

suits:

> "We were pleased with the USPTO's initial decision in early November denying
> Brainlab AG and Varian Medical Systems, Inc.'s IPR petition on claims 1-9," said
> Doug Croxall, Founder and CEO of Marathon Patent Group. "As a result of the
> earlier decision, Sarif's infringement suits will be unaffected since none of Sarif's
> asserted claims were subject to invalidation via the instituted IPR."
> Croxall continued, "Hopefully our voluntarily disclaiming of claims 10 and 11 of the
> 725 patent resulting in the termination of the proceeding, combined with the earlier
> IPR denial with respect to claims 1-9, will encourage the parties in suit to reach
> reasonable licensing arrangements with Sarif Biomedical."[3]

---

[2]  In an IPR, the Patent Office does not institute proceedings for claims that cannot be
construed.

[3]  http://www.marathonpg.com/news/press-releases/detail/824/marathon-patent-group-
announces-uspto-ruling-granting-joint

Unsurprisingly in light of its press release, Sarif continued to litigate this case for a year after it knew its case was doomed.

> **C.     Sarif's multiple different constructions of element (e) demonstrate both the frivolity of its case and that it unreasonably litigated the case.**

Sarif asserted no fewer than five different constructions for element (e) in this litigation, some of them so inconsistent with each other so as to be mutually exclusive.

> **1.     Sarif's *first* construction of element (e) was software running the algorithm at col. 10, lines 53-56 of the '725 patent.**

In response to the IPR request, Sarif argued to the Patent Office that the corresponding structure for element (e) "is an algorithm or software running on a computer system that 'obtains the transformation $^{o}T_{i}(t)$, inverse of $^{i}T_{o}(t)$, making it possible to automatically control the tool in real time in relation to a target defined in the image data base.'"  IPR Decision, pp. 9-10 (D.I. 62-1) (citing Sarif Preliminary Response to IPR Request, p. 4).  In other words, Sarif argued that the structure corresponding to the means for determining was the software described at col. 10, lines 53-56 of the patent.

As noted above, not only did the Patent Office disagree with Sarif, the Patent Office found that there was ***no structure anywhere*** in the '725 patent for performing the function of element (e).  IPR Decision, p. 11 (D.I. 62-1).

Despite the results of the IPR, Sarif refused to drop its suit and instead required Brainlab to seek a ruling from this Court confirming the Patent Office's decision that claims 1 through 9 are indefinite and invalid.  The defendants were thus required to retain an expert, prepare an expensive tutorial video, and file three claim construction briefs.

**2.      Sarif's *second* construction of element (e) was mutually exclusive to its first construction.**

Sarif itself agrees that it would be unreasonable for it to continue this action unless it reasonably believed that the Patent Office was wrong when it found that claims 1 through 9 are indefinite.  Sarif Answering Brief, p. 4 (D.I. 79).  Yet Sarif's actions demonstrate that it knew that Patent Office was correct.  Rather than argue that its proffered claim construction before the Patent Office was correct, Sarif abandoned its construction and proposed a different construction in the Joint Claim Construction Chart.  Sarif's new construction relied on the cameras and the algorithms described in Step 2 of the patent and eliminated entirely the algorithm from its construction in the IPR:

> "at least two acquisition cameras integral with the fixed reference system Rc and positioned such that the field of observation contains the mobility space of the tool" disclosed at Col. 3 Lns 39-43 and the algorithms disclosed at Col. 7 Ln 66 – Col. 9 Ln. 60 under the heading "Step 2: Implementation of concordance between the tool reference frame and the fixed reference frame."

See, JCCC, pp. 8-9 (D.I. 69).

Moreover, apart from the fact that the Patent Office already considered this algorithm when determining there was ***no*** corresponding structure for element (e) anywhere in the '725 patent, Sarif provided no explanation as to how this portion of the patent described using an image database as required by element (e) of claim 1.  Put simply, this portion of the '725 contains no mention of or reference to an image database.

**3.      Sarif's *third* construction of element (e) added additional algorithms not in its second construction.**

In its Opening Claim Construction Brief, Sarif did not argue that the Patent Office had misunderstood the '725 patent or incorrectly found claim 1 indefinite.  Indeed, Sarif wholly

ignored the IPR decision and did not mention it once in its Opening Brief.  Moreover, it again changed the claim construction it was advocating from that in the JCCC.[4]

Sarif's third construction of element (e) differed from its second construction in the JCCC by adding the algorithms included from Col. 9, line 61 through Col. 10, line 56.  Thus, where Sarif's second construction included the algorithms of "Step 2" only, its third construction also included at least "Step 3: Implementation of concordance between the image reference frame and the camera reference frame" and "Step 4: Implementation of concordance between the image reference frame and the tool reference frame."  In other words, Sarif's third construction for element (e) included the algorithms of steps 2 through 4 in the patent.

To justify its new claim construction, Sarif was forced to rewrite the '725 patent.   Sarif needed to change the wording of the SUMMARY OF THE INVENTION in the patent by eliminating the "advantageously" preface and ***adding*** "also" to the language of the patent:

> [T]he means for determining the coordinates of the tool in said fixed reference system $R_c$ are ***[also]*** constituted by at least two acquisition cameras integral with the fixed reference system $R_c$ and positioned such that their field of observation contains the mobility space of the tool.  ('725 patent at 3:39-43).

Sarif Opening Br. at 18 (D.I. 75) (emphasis added).   The fact that Sarif had to "rewrite" the patent to justify its claim construction would have caused any reasonable litigant to conclude its case was frivolous.

---

[4]     Counsel for Sarif admitted at the claim construction hearing that the construction that it provided in the box on pages 17-18 of its opening claim construction brief was not correct and its new construction was different than the construction it asserted in the JCCC: "It is true, Your Honor, that in the box, we copied that from the joint claim construction statement and it only goes through col. 9, line 60.   But, the brief goes through and talks about Steps 2, 3 and 4 all the way through."   Claim Construction hearing, p. 57 (D.I. 121).

**4.  Sarif in its Answering Brief asserted a *fourth* construction that defined "determining" to require active control of the tool.**

In its Answering brief, Sarif proposed a new—now its fourth—construction for element (e).  In its newest construction Sarif for the first time argued that the word "determining" in element (e) "is actually used here in its active sense of directing movements and positioning of the tool…"  Sarif Answering Brief, p.4 (D.I. 79).

Sarif then used this construction to blame the Patent Office – for the first time – for supposedly coming to the wrong conclusion that element (e) is indefinite.  According to Sarif, the "fundamental error in Defendants' argument and the PTAB's decision is their misinterpreting of the word 'determining'" in element (e).  *Id.*  Sarif argued that if the defendants and the PTAB had used "determining" in its active sense rather its passive sense, there would exist adequate structure described in the patent for performing the claimed function of element (e).  *Id.*  Sarif, however, never made this argument to the Patent Office—or in any of its previous constructions for that matter.  In any event, this argument was short-lived as it seems to have disappeared from the construction that Sarif advocated at the claim construction hearing.

In its Answering Brief, Sarif also for the first time submitted an eleventh-hour, 35-page declaration from a technical expert, Dr. Aaron Filler. D.I. 80.  The Filler declaration presented arguments, as well as claim constructions, not present in any of Sarif's briefs and required a further sur-reply brief from the defendants.  D.I. 83, 85.

**5.  Sarif's expert testified at the claim construction hearing to a *fifth* claim construction for element (e), and Sarif withdrew its argument that element required an "active" step of directing movements.**

At the claim construction hearing, Sarif returned to the claim construction it asserted in its opening brief and dropped the contention that element (e) required "active" positioning of the tool.  Moreover, Sarif's expert testified that the correct construction of element (e) would

require not only the structure in Sarif's construction but also the algorithm of Step 1, a feedback mechanism, and real-time correction of the tool:

> Q.   And then we added to this on the right [Sarif's previous claim constructions] Steps 3 and 4, Step 1, the feedback mechanism, the real-time correction of the tool and the elements in column 10, lines 50 through 53, right?
>
> A.   Yes….

Claim Construction Transcript, p. 36-37 (D.I. 121).

As noted above, this newest construction abandoned Sarif's fourth construction.

**D.     The Court determined element (e) was indefinite**

Even in light of Sari's myriad proposed constructions, the Court concluded that the function of element (e) was not supported by the specification.  It agreed that the patent discloses the cameras as supporting structure for determining the coordinates of the tool, but found that the cameras do not use "data from [an] image data base":

> However, the Court further agrees with Defendants that the cameras do not determine the coordinates "based on data from the image data base." (See Tr. at 48 ("The problem we have here is that ... [t]here is no image database. The cameras obviously don't take things from the image database."); see also id. at 11 (Sarif s expert Dr. Filler agreeing that function envisions using data image database to determinate what tool coordinates should be.))
>
> \*     \*     \*
>
> While it is true that the specification teaches detailed formulas for transitioning from one frame to another, there is no clear structural link for the cameras to use the image database to determine the coordinates of the tool - which is the disclosed function.

Decision, p. 20-22 (D.I. 125).

The Court's decision should not have come as a shock to Sarif.  The Court came to the same conclusion as the Patent Office for the same reason the Patent Office found element (e) indefinite. The parties subsequently stipulated to a judgment of invalidity of claims 1 through 9 of the '725 patent due to indefiniteness under 35 U.S.C. § 112, ¶ 2, and the Court entered judgment to that effect on October 6, 2015.  D.I. 127.

## III.    ARGUMENT

### A.    Legal Standard

The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In this context, "exceptional" retains its ordinary meaning of "'uncommon, rare, or not ordinary.'" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Accordingly, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* "Section 285 discourages certain 'exceptional' conduct by imposing the cost of bad decisions on the decision maker." *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 79 F. Supp. 3d. 1111, 1114 (C.D. Cal. 2015).

District courts determine whether a case is "exceptional" on a case-by-case basis, "considering the totality of circumstances." *Octane Fitness*, 134 S. Ct. at 1756. Fees may be awarded where "a party's unreasonable conduct – while not necessarily independently sanctionable – is nonetheless" exceptional. *Id.* at 1757. "A case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* Courts may use such nonexclusive factors as frivolousness, motivation, and objective unreasonableness in analyzing the factual or legal components, and the need in particular circumstances to advance considerations of compensation and deterrence. *Id.* at 1756, n.6. A party must prove its entitlement to fees by a preponderance of the evidence. *Id.* at 1758. Federal Rule of Civil Procedure Rule 54(d)(2)(C) provides that "[t]he court may decide issues of liability for fees before receiving submissions on the value of services."

**B.** **This case is exceptional warranting an award of attorneys' fees under 35 U.S.C. § 285.**

As the Supreme Court stated in *Octane Fitness*, an exceptional case is one that stands out with respect to: 1) the substantive strength of a party's litigating position; or 2) the unreasonable manner in which the case was litigated. 134 S.Ct. at 1756. This case is demanding of an award of fees both because Sarif's case was weak from the start and because of the way in which it litigated the case.

**1.** **The substantive strength of Sarif's case was very weak.**

From the beginning Sarif should have known its case was frivolous. If Sarif did not understand the weakness of its case before filing, it clearly should have understood it when the Patent Office determined that claims 1 through 9 were indefinite.

**a.** **Sarif could not have performed a legitimate pre-filing investigation without knowing claim 1 was nonsensical.**

"[A] patentee does not act in good faith if it raises an infringement claim in which 'no reasonable litigant could realistically expect success on the merits.'" *GP Indus. Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007) (citation omitted). "For this reason, proper investigation is an important pre-requisite to filing an infringement claim . . . ." *JS Prods., Inc. v. Kabo Tool Co.*, No. 2:11–cv–01856 RCJ, 2014 WL 7336063, at *4 (D. Nev. Dec. 22, 2014).

Determining infringement is a two-step inquiry. *Read Corp. v. Portec, Inc.*, 970 F. 2d 816, 821 (Fed. Cir. 1992). The claims must first be construed, and second, the accused product must be compared to the claim language as interpreted. *Id.* Thus before Sarif filed suit against the four defendants it asserted infringed the '725 patent, it must have, as part of a proper pre-filing investigation, attempted to construe the claims. Yet even a rudimentary analysis should have concluded that element (e) of claim 1 was nonsensical and inconsistent with the patent.

Element (e) of claim 1 requires a "means for determining coordinates of the tool in the fixed reference system $R_c$ **based on data from the image data base**." '725 patent, col. 11:18-20 (emphasis added).  The patent, however, describes a different system that in no way uses data from the image database to determine the position of the tool:

> Advantageously, the means for determining the coordinates of the tool in said fixed reference system $R_c$ are constituted by at least two acquisition cameras integral with the fixed reference system $R_c$ and positioned such that their field of observation contains the mobility space of the tool.

'725 Patent, col. 3:39-43.  Whenever a claim recites the word "means," it creates a rebuttable presumption as a matter of law that the claim is a means-plus-function claim subject to §112 ¶ 6. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F. 3d 1359, 1369 (Fed. Cir. 2002).  Any reasonable pre-filing investigation would have required Sarif either to determine the corresponding structure for this function as required by the statute or to come up with an argument to overcome this strong presumption.   It is inconceivable that Sarif could have done an adequate pre-suit investigation without realizing that not only was there no corresponding structure to the function at issue, but also that this claim element was inconsistent with the specification. The fact that Sarif did not even attempt to resolve this inconsistency before filing suit is best demonstrated by the fact that it asserted five different constructions for this one element.

> **b.     Sarif could not have had a reasonable basis to believe that the Patent Office erred in finding that element (e) of claim 1 is indefinite.**

In response to Brainlab's claims that its case is frivolous, Sarif argued that "even if the Court were to agree with Defendants that claim element (e) is indefinite, Sarif's maintenance of this action notwithstanding the PTAB decision is not unreasonable given Sarif's reasonable belief that the PTAB decision was incorrect…."  Sarif Answering Brief, p. 4 (D.I. 79).

Sarif argued that the Patent Office erred because: 1) it did not understand that element (e) required an active positioning of the tool; and 2) that the Patent Office did not have the benefit of the testimony of its expert.   Sarif also argued that the Patent Office's conclusions can be disregarded because it supposedly used a different standard for determining if claim 1 were indefinite.

> **(i)      Sarif's construction of element (e) before the Patent Office did not require active positioning of the tool, nor did Sarif's send third or fifth constructions for element (e).**

In Sarif's Answering Claim Construction Brief, it for the first time attempted to explain why it believed that the Patent Office's finding that element (e) was indefinite was in error. According to Sarif, the Patent Office erred because it did not appreciate the word "determining" in element (e) should be construed to require an "active" positioning of the tool.   Sarif Answering Brief, p. 5 (D.I. 79).

The problem with Sarif's argument is that Sarif did not argue to the Patent Office that element (e) required active positioning of the tool.   Nor did it even include this concept in its claim construction to the Patent Office.   In fact Sarif's first two claim constructions after the IPR proceedings lacked this active positioning of the tool as did its final claim construction at the hearing.   *See*, JCCC (D.I. 69); Sarif's Opening Claim Construction Brief (D.I. 75); and Sarif's claim construction proffered at the hearing (D.I. 121).   Moreover, Sarif seems to have abandoned this contention altogether at the claim construction hearing.

> **(ii)   Sarif's argument that the Patent Office erred because it did not have the benefit of testimony is itself in error as Sarif's expert did not support Sarif's claim construction for element (e).**

At the *Markman* hearing, Sarif took a different tack in arguing why the Patent Office was wrong.  According to Sarif at the hearing, the Patent Office erred because the Patent Office "did not have the benefit of evidence regarding how one of skill in the art would understand the specification."  Claim Construction Transcript, p. 45(D.I. 121).  That argument is belied by the fact that Sarif's expert did not agree even with Sarif's construction.

Sarif's expert testified at the hearing that the word "determining" did not require an "active control" of the tool:

> Q.      … Is it your understanding that the definition of the word "determining" in Element (e) requires active control?
>
> A.      No, (e) is determination….

Claim Construction Transcript, p. 21 (D.I. 121).

Moreover, Dr. Filler construed element (e) vastly different from the construction that Sarif proffered before the Patent Office.  At the Patent Office, Sarif argued that the structure corresponding to element (e) was solely "an algorithm or software running on a computer system that 'obtains the transformation $^{o}T_i(t)$, inverse of $^{i}T_o(t)$, making it possible to automatically control the tool in real time in relation to a target defined in the image data base.'"  IPR Decision, pp. 9-10 (D.I. 62-1) (Sarif Preliminary Response to IPR Request, p.4).  At the hearing, Dr. Filler testified that the necessary structure was not only that which Sarif identified to the Patent Office, but the algorithms set forth in Steps 1, 2, 3 and 4 of the patent, a feedback mechanism, and real-time correction of the tool.  Claim Construction Transcript, p. 36-37 (D.I. 121).  Thus, Dr. Filler's testimony would not have been helpful to Sarif in the IPR.

### (iii)    Sarif's argument that the Patent Office's decision can be ignored was meritless.

Sarif argued at the claim construction hearing that the Court could ignore the Patent Office's decision because the Patent Office applied a different standard than that at Court:

> The [Patent Office] does not have to presume the validity of the patent like the Court does.  In the [Patent Office], the patent challenger does not have the burden to prove there is no corresponding structure by clear and convincing evidence like defendants do here.

Claim Construction Transcript, pp. 44-45 (D.I. 121).   Sarif's argument misses the mark.

While it is true that the burden is on the defendants to prove invalidity by clear and convincing evidence, that was not the issue before the Court.  The sole issue that the Court was required to decide was one of claim construction—not invalidity—namely, whether there was adequate structure in the patent that was clearly linked to the function of element (e).   *See Nautilus,* 134 S.Ct at 2129-30 (requiring reasonable clarity for claims); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1296 (Fed. Cir. 2014) (discussing review of specification for corresponding structure for mean-plus-function claims), *overruled in part on other grounds*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).

The issue of validity did not come up until after claim construction when Sarif conceded that given the Court's claim construction, Brainlab had proven claims 1 through 9 are invalid—presumably by clear and convincing evidence.   *See* D.I. 127.

### 2.    Sarif litigated this case in an unreasonable manner.

### a.    Sarif's ever shifting claim construction theories demonstrate Sarif's litigation misconduct.

Sarif's five different and often mutually exclusive proposed claim constructions demonstrate litigation misconduct.  *See Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 WL 3956703, at *10 (N.D. Cal. Aug. 12, 2014) (awarding fees where plaintiff improperly

shifted litigation theories).  For instance, in *Kilopass*, the plaintiff took one position on claim construction of a particular limitation before the district court and then later took a different position on claim construction before the Board of Patent Appeals and Interferences ("BPAI") that was "clearly irreconcilable" with its first position.  *Id.*  The defendant filed a motion for a disclaimer based on plaintiff's position before the BPAI.  *Id.*  At first, the plaintiff argued that its positions were consistent, but when the court granted the defendant's motion, the plaintiff reversed course and asserted the position it took before the BPAI was a mistake.  *Id.*  The plaintiff then sought to have this "mistake" "corrected" before the BPAI. *Id.*  The court held that the plaintiff's "attempt to argue one thing to this Court, then argue a different thing to the BPAI, and then attempt to change its position before the BPAI only after it resulted in an unfavorable ruling from this Court amounts to 'gamesmanship'" constituting evidence that the plaintiff had litigated the action in an unreasonable manner.  *Id.*

During the course of this litigation, Sarif presented this Court and the Patent Office with a combined five different claim constructions for element (e) of claim 1 alone.  As was the case in *Kilopass*, these theories were contradictory and irreconcilable.  Such gamesmanship makes this case exceptional.

> **b.      The fact that Sarif prosecuted this action as part of a predatory strategy to extract a nuisance settlement indicates that Sarif's litigation conduct was unreasonable.**

Extortive and harassing practices aimed to obtain settlements rather than vindicate patents constitute improper motivation sufficient to render a case exceptional. *Summit Data Sys., LLC v. EMC Corp.*, No. 10-749-GMS, 2014 WL 4955689, at *5 (D. Del. Sept. 25, 2014) (plaintiff is improperly motivated if it files the complaint to "extract quick settlements"); *Lumen View Technology, LLC v. Findthebest.com, Inc.*, 63 F. Supp. 3d 321, 326 (S.D.N.Y. 2014)

(improper motivation includes a "desire to extract a nuisance settlement"); *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. 11-1175-RGA, 2014 WL 4675002 (D. Del. Sept. 12, 2014). Courts are more likely to question the motives of nonpracticing entities. *See LendingTree, LLC v. Zillow, Inc.*, No. 10-00439-FDW-DCK, 2014 WL 5147551, at *13 (W.D.N.C. Oct. 9, 2014) (distinguishing disputes "involving nonpracticing entities whose sole business model is to acquire patents and litigate rights associated with the patents, usually in an attempt to obtain a settlement or license with the allegedly infringing company"). The inference of impropriety is stronger if the nonpracticing entity initiates several patent infringement suits within a short period of time. *Lumen*, 63 F. Supp. 3d at 326-27 (awarding fees where plaintiff instituted several lawsuits in "a short time frame"); *cf. Gevo, Inc. v. Butamax Advanced Biofuels LLC*, No. 13-576-SLR, 2014 WL 4247735, at *2 & n.2 (D. Del. Aug. 26, 2014) (denying attorneys' fees where both parties were practicing entities involved in multiple patent infringement matters).

In *Lumen*, the court noted the need to award enhances attorneys' fees stemmed from "the need to deter the plaintiff's predatory strategy, the plaintiff's desire to extract a nuisance settlement, the plaintiff's threats to make the litigation expensive, and the frivolous nature of the plaintiff's claims." 63 F. Supp. 3d at 326. There, the plaintiff filed a number of similar lawsuits within a short timeframe that indicated "a predatory strategy aimed at reaping financial advantage from the inability or unwillingness of defendants to engage in litigation against even frivolous patent lawsuits." *Id.* at 326-27. The court further noted that *Lumen* was only decided on the merits because the defendant there had the financial ability to resist the plaintiff's predatory scheme and chose to fund a defense in court rather than pay an unwarranted, less expensive licensing fee. *Id.* at 327. Had the defendant not done so, the plaintiff's predatory practices would have continued unchecked. *Id.* The court therefore determined that not only

17

was an award of fees appropriate but so too was an award of enhanced fees to deter similar misconduct by the plaintiff in the future. *Id.*

Sarif filed three near-identical lawsuits against four defendants in three and a half months, and three of those defendants quickly settled. *Sarif Biomedical LLC v. Accuray Inc.*, No. 1:13-cv-151-LPS (D. Del.); *Sarif Biomedical LLC v. Siemens Medical Solutions USA Inc.*, No. 1:13-cv-847-LPS (D. Del.); *Sarif Biomedical LLC v. Brainlab Inc.*, No. 1:13-cv-846-LPS (D. Del.). As discussed in detail above, this suit was frivolous, and no reasonable litigant who performed even the most perfunctory pre-filing investigation would have thought the asserted claims of '725 patent were valid, let alone infringed. And even if Sarif had performed such an investigation, it has—thanks to the PTAB's ruling—known for nearly a year that these claims are invalid. Nevertheless, Sarif continued to pursue this action in the hopes of blackmailing Brainlab into a nuisance settlement. Like the defendant in *Lumen*, however, Brainlab chose to stand up to Sarif's predatory conduct, seeking a decision on the merits. Just as the court did in *Lumen*, so too should this Court award Brainlab its attorneys' fees to deter Sarif from continuing its misconduct.

### C. At this time, the Court need only determine whether Sarif is liable for Brainlab's attorneys' fees.

Under Rule 54(d)(2)(C) of the Federal Rules of Civil Procedure, Brainlab requests bifurcation of its request for attorneys' fees into two phases: (1) briefing on Sarif's liability for those fees, and (2) subsequent submissions regarding the appropriate amount for such an award. *See, e.g.*, *Nat. Merchant Center, Inc. v. Medianet Group Techs., Inc.*, 893 F. Supp. 2d 1054, 1056 (C.D. Cal. 2012) (bifurcating determination of fee award into liability and amount phases). Bifurcation under Rule 54(d)(2)(C) will enable the parties to tailor their evidentiary presentations to the Court's liability decision, thus streamlining the process and avoiding unnecessary

expenditures of resources.  Accordingly, this brief does not address the issues of the amount of or reasonableness of Brainlab's fees.  Brainlab is ready to provide further briefing and evidence on these issues once it receives instruction from the Court.

## IV.    CONCLUSION

Sarif brought this suit in bad faith without performing even the most basic pre-filing investigation.  It perpetuated this lawsuit in an effort to extract a nuisance settlement even after it knew its asserted claims were invalid.  This case should therefore be declared exceptional, and Brainlab should be awarded its fees and related expenses.  Moreover, both Sarif and its attorneys should be held jointly and severally liable for those fees and expenses.  *See Segan LLC v. Zynga Inc.*, __ F. Supp. 3d __, No. 14-cv-01315-VC,  2015 WL 5315945, at *6-7 (N.D. Cal. Sept. 10, 2015) (discussing Rule 11 as vehicle for joint and several liability for fees).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mnoreika@mnat.com

*Attorneys for Brainlab Inc.,*
*Brainlab AG and Brainlab Medizinische*
*Computersysteme GmbH*

OF COUNSEL:

Jay R. Campbell
Joshua M. Ryland
TUCKER ELLIS LLP
950 Main Ave., Suite 1100
Cleveland, OH 44113
(216) 696-5639

October 19, 2015

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 19, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 19, 2015, upon the following in the manner indicated:

Richard D. Kirk, Esquire        *VIA ELECTRONIC MAIL*
Stephen B. Brauerman, Esquire
Vanessa R. Tiradentes, Esquire
Sara E. Bussiere, Esquire
BAYARD, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE  19801
*Attorneys for Plaintiff*

Marc A. Fenster, Esquire        *VIA ELECTRONIC MAIL*
Jeffrey Z.Y. Liao, Esquire
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025-1031
*Attorneys for Plaintiff*

Mary B. Graham, Esquire        *VIA ELECTRONIC MAIL*
Jeremy A. Tigan, Esquire
Stephen J. Kraftschik, Esquire
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
*Attorneys for Varian Medical Systems, Inc.*

Joseph Greco, Esquire                                    *VIA ELECTRONIC MAIL*
Alfredo A. Bismonte, Esquire
Kimberly P. Zapata, Esquire
Jeremy M. Duggan, Esquire
BECK, BISMONTE & FINLEY, LLP
150 Almaden Boulevard, 10th Floor
San Jose, CA 95113
*Attorneys for Varian Medical Systems, Inc.*

*/s/ Maryellen Noreika*

_____

Maryellen Noreika (#3208)