IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SARIF BIOMEDICAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-846 (LPS) |
| | ) | |
| BRAINLAB, INC.; BRAINLAB AG; | ) | |
| BRAINLAB MEDIZINISCHE | ) | |
| COMPUTERSYSTEME GMBH; VARIAN | ) | |
| MEDICAL SYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## BRAINLAB'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mnoreika@mnat.com

*Attorneys for Brainlab Inc.,*
*Brainlab AG and Brainlab Medizinische*
*Computersysteme GmbH*

OF COUNSEL:

Jay R. Campbell
Joshua M. Ryland
TUCKER ELLIS LLP
950 Main Ave., Suite 1100
Cleveland, OH 44113
(216) 696-5639

November 16, 2015

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.  INTRODUCTION ...............................................................................................1

II. ARGUMENT......................................................................................................2

    A.  Sarif purposely avoids the arguments raised in Brainlab's brief and attempts to hide behind an alleged pre-filing investigation that it refuses to disclose. ....................................2

        1.  Sarif focuses its brief on rebutting findings that the Court never made and arguments that Brainlab never raised.....................................................................2

        2.  Sarif cannot withhold on the basis of privilege a pre-filing investigation it asserts as a defense. ...............................5

    B.  Sarif's has no response as to why it maintained this case after the PTAB's decision. ........................................................7

    C.  Sarif litigated this case in an unreasonable manner. ...................................8

        1.  Sarif did not "refine" its construction of element (e); it changed it substantively at least five times. ................................8

        2.  Sarif's decision not to file an appeal confirms that its case was without merit. ............................................9

III. CONCLUSION...................................................................................................9

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

**Cases**

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S.Ct. 1749 (2014) .........................................................................................................1

*Tackett v. State Farm Fire and Ca. Ins., Co.*,
   653 A.2d 254, 259 (Sup. Ct. Del. 1995)
   (citing *Friction Division Products, Inc. v. E.I Du Pont DeNemours, Inc*.,
   117 F.R.D. 535, 538 (D. Del. 1987)) .....................................................................................6

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339, 1349 (Fed. Cir. 2015)................................................................................2, 9

**Statutes**

35 U.S.C. §285................................................................................................................. *Passim*

## I.     INTRODUCTION

The Court should find this case exceptional under 35 U.S.C. § 285 because Sarif—a non-practicing entity—unreasonably pursued litigation against Brainlab to extract a settlement fee. While Sarif's Opposition Brief touts a "responsible course of conduct," its arguments:

- ***misstate*** the basis for this Court's indefiniteness determination;

- ***improperly assert*** a pre-filing investigation that it refuses to disclose; and

- ***fail to attest or explain*** why the alleged investigation demonstrates *good faith*.

Taken alone, Sarif's tactics highlight its lack of good faith. When coupled with its deliberate attempt to avoid Brainlab's arguments, however, Sarif's Opposition Brief leaves no doubt that this case satisfies the Supreme Court's standard for exceptionality under *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 134 S.Ct. 1749 (2014).

Brainlab's basis for seeking fees under § 285 is not complex: Sarif knew ***element (e)*** of claim 1 was indefinite. Even assuming it failed to appreciate the weakness before filing, it simply has no excuse for ignoring it after serving the Complaint. Brainlab told Sarif repeatedly that element (e) was indefinite, the Patent Office came to the same conclusion, and this Court was forced to repeat that finding before Sarif would dismiss its case.  Rather than address these issues squarely, however, Sarif spends its brief arguing that its construction for ***element (d)***—which was not raised in Brainlab's motion—was reasonable, conspicuously ignoring Brainlab's argument regarding element (e). Sarif also argues that its alleged pre-filing investigation absolves its conduct, yet it continues to withhold the investigation from Brainlab as privileged. Not only is this improper, but it is particularly disturbing considering that Sarif's sole owner, Marathon Patent Group, has publicly conceded that inadequate investigations are a known risk of its business.

Sarif's conduct and claims fall well short of that required to establish a good faith basis for patent litigation under § 285. Brainlab's motion should therefore be granted.

## II.     ARGUMENT

### A.     Sarif purposely avoids the arguments raised in Brainlab's brief and attempts to hide behind an alleged pre-filing investigation that it refuses to disclose.

Sarif's Opposition Brief is emblematic of its approach to this case and underscores precisely why this case is exceptional under *Octane Fitness*. Even a cursory review of Sarif's brief demonstrates that it is a purposeful attempt to misstate Brainlab's arguments. Sarif, quite literally, spends its brief arguing about a different claim element than the one raised in Brainlab's brief. Making matters worse, its only other defense is that a purported pre-filing investigation shows its case was reasonable—yet it refuses to reveal the contents of that investigation.

#### 1.     Sarif focuses its brief on rebutting findings that the Court never made and arguments that Brainlab never raised.

Sarif's core argument is that it could not have anticipated the "drastic" change in the law following its claim construction brief that resulted in element (d)(3) of claim 1 being indefinite. Sarif relies on the Federal Circuit's recent decision in *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015)—a case Sarif cites *seventeen* times—for support and states that it could not have anticipated that the *Williamson* decision could have affected the construction of element (d)(3). Opp. Brief, p. 1. The problem: nowhere in Brainlab's motion for fees is *element (d)* or *Williamson* mentioned.

Brainlab's argument has always been that this case is frivolous because of the clear indefiniteness of *element (e)*. The foundation for Brainlab's motion is: 1) that a pre-filing investigation would have revealed to Sarif that its case was exceptionally weak because *element (e)* of claim 1 is in direct conflict with the specification of the patent; 2) that Sarif's decision to

maintain the suit after the PTAB found *element (e)* indefinite was unreasonable; and 3) that Sarif's ever-changing construction of *element (e)* during the litigation is evidence of misconduct.

Despite Brainlab's continuous refrain about element (e), Sarif's directs the bulk of its Opposition to explaining its litigation was reasonable because *its construction for element (d) was reasonable*. In fact, only after Sarif knocks down the straw man of element (d) does it even mention element (e), and then only to argue that elements (d) and (e) were decided on the same basis, arguing the "Court's decision *with regards to the (d)(3) term and (e) term* was based on the *Williamson* standard." Opp. Brief, p. 20 (emphasis added). Not only does Sarif lump (d) and (e) together when the Court did not, but it ignores that the Court never cited *Williamson* when finding element (e) indefinite. D.I. 125, pp. 19-22. Nor would the Court need to. *Williamson* changed the law for construing claims that do not recite "means for" language. Sarif, however, previously *admitted that element (e) is means-plus-function* clause (D.I. 125, p. 19), so *Williamson* was never implicated. Thus *Williamson* did not change the law regarding element (e)'s construction.

Even assuming Sarif could somehow explain why it misconstrues the Court's claim construction opinion, there is simply no way Sarif failed to appreciate that element (e) was the basis of Brainlab's motion. Indeed, element (e) has always been the focus of this case, as demonstrated by:

- Sarif's response to Brainlab's petition before the Patent Office for Inter Partes Review (IPR) argued solely the construction of element (e) (*see* the concurrently filed Declaration of Jay R. Campbell ("Campbell Dec.") Ex. 1);

- the Patent Office's decision in the IPR construed only element (e) of claim 1 and found that claim indefinite (D.I. 62-1, pp. 7, 11);

- Brainlab's claim construction briefing focused on element (e). D.I. 73, p. 1 ("If the Court agrees with the PTAB that element (e) of claim 1 is indefinite, the Court need not construe any other element: all claims of the '725 patent would be invalid and plaintiff's case must be dismissed."); *see also* D.I. 76 (response brief); and

- Brainlab's request for fees under § 285 turns on element (e).

Nevertheless, Sarif invents in its Opposition an argument concerning element (d) and then proceeds to assail Brainlab for the argument it never made: "***Brainlab's argument*** that Sarif somehow knew or should have known that ***the (d)(3) element*** was invalid at any point in time relevant to its claim for attorney fees ***is disingenuous.***" Opp. Brief, p. 9 (emphasis added). Brainlab has never once argued that Sarif's case was frivolous or exceptional because of its construction of element (d)(3)—every argument it makes is based on Sarif's failure to assess element (e). Thus, Sarif's argument is not only jabberwocky, but it underscores just how far Sarif will go to avoid addressing element (e).

Lastly, Sarif attempts to equate the fact that it offered expert testimony from Dr. Filler in support of its claim construction with the conclusion that its construction was reasonable. Notably, however, Dr. Filler disagreed with Sarif's construction in his declaration (D.I. 80) and during the hearing. *See, e.g.*, D.I. 121, p. 36-37. In fact, Dr. Filler testified that performing element (e) required several other structures that are not present in Sarif's construction, such as a feedback mechanism and real-time correction of the tool position. *See* Brainlab's Opening Brief In Support of its Motion for Attorney Fees, pp. 8-9 (D.I. 130).

Sarif's attempt to skirt the topic of the element (e) is not only exceedingly apparent, but it tacitly concedes that Sarif has no rebuttal to Brainlab's arguments in support of fees. Absent its

non-sequitur arguments, Sarif offers no justification for pressing claims based on element (e). Instead, it must twist Brainlab's argument into something it was not to even build a purported defense. This brand of unreasoned advocacy is the hallmark of an exceptional case under § 285.

### 2.  Sarif cannot withhold on the basis of privilege a pre-filing investigation it asserts as a defense.

Aside from its attempts at diversion discussed above, Sarif's only other defense is that its case was reasonable because it allegedly performed an "extensive and thorough pre-filing investigation" that it *refuses to disclose to Brainlab*. To be sure, Sarif never explains what element (e) was construed to mean during that investigation, why that investigation evidences good faith, or even if the investigation actually addressed element (e). Instead, Sarif offers a self-serving declaration from its counsel, Marc Fenster. Notably, however, Mr. Fenster *does not attest that Sarif had a good faith basis* for its claim based on the investigation; he states only that Sarif performed an investigation. D.I. 132.

Even taking Mr. Fenster at his word, attesting that Sarif *performed* an investigation is not *evidence* of good faith. Sarif's refusal to provide the investigation—at the very least—raises the possibility this analysis may not withstand scrutiny. For example, the notion that Sarif performed an "extensive and thorough pre-filing investigation" yet chose to change its construction for element (e) *five times* seems highly inconsistent. Likewise, the fact that Sarif's parent, Marathon Patent Group, stated it was "pleased" by the Patent Office's IPR decision finding element (e) indefinite is nonsensical if it actually conducted an investigation finding otherwise (that is, unless it was puffing to prolong the case because it was aware of the problem).[1]

---

[1]    http://www.marathonpg.com/news/press-releases/detail/824/marathon-patent-group-announces-uspto-ruling-granting-joint

In fact, Marathon Patent Group makes an even more disturbing statement in light of Sarif's attempt to shield itself with an investigation it will not disclose. While Marathon Patent Group acquired Sarif during the pendency of this lawsuit (in 2014), it identifies the "failure of [its] due diligence process to identify significant issues, including issues with respect to patented technologies and patent portfolios" as a reported risk factor for its business. (See 2015 Form 10-K at 9.)[2] The notion Marathon Patent Group thinks its diligence on acquired patents (including Sarif's) presents a risk significant enough to warn the government and shareholders renders absurd the proposition that it at the same time wants the Court and Brainlab to accept its pre-filing "due diligence" in the case sight unseen.

Even assuming there was a full pre-filing investigation, Sarif cannot use that investigation as a defense while withholding from disclosure under a claim of privilege. Sarif's choice to assert its investigation as is a clear-cut waiver of attorney-client privilege. "The courts of [Delaware] have refused to allow a party to make bare, factual allegations, the veracity of which are central to resolution of the parties' dispute, and then assert attorney-client privilege as a barrier to prevent a full understanding of the facts disclosed." *Tackett v. State Farm Fire and Ca. Ins., Co.,* 653 A.2d 254, 259 (Sup. Ct. Del. 1995) (citing *Friction Division Products, Inc. v. E.I Du Pont DeNemours, Inc.,* 117 F.R.D. 535, 538 (D. Del. 1987) (manifestly unfair for a party to make a factual assertion based on an investigation and declaration yet deny the opposing party the opportunity discovery the foundation for the assertions due to privilege.)).

Sarif cannot have it both ways. Either it discloses its pre-filing investigation and provides discovery on that topic, or that investigation cannot be a factual basis demonstrating its good faith. After receiving Sarif's Opposition, Brainlab promptly wrote Sarif's counsel to notify it of

---

[2]   http://www.sec.gov/Archives/edgar/data/1507605/000141588915001044/mara10k_dec312014.htm

the waiver and to request that Sarif provide the investigation. Campbell Dec. Ex. 2. To date, Sarif has not provided its investigation to Brainlab. *Id.* at ¶ 4. Further, Sarif's proposed *in camera* review (Opp. Brief, p. 6, f.n. 2) is not only inappropriate but obstructionist if there is no privilege to protect. Should the Court wish to consider Sarif's alleged pre-filing investigation, Brainlab respectfully requests that the investigation be provided to Brainlab with an opportunity to respond. In the alternative, Brainlab requests that the Court strike any reference to the pre-filing investigation and remove the issue from consideration as a defense to exceptionality under § 285.

**B.      Sarif's has no response as to why it maintained this case after the PTAB's decision.**

Sarif's Opposition tellingly fails to explain why it maintained this lawsuit after the PTAB issued its decision. Sarif argues that it "carefully considered the PTAB decision" but disagreed with it. Opp. Brief, p. 13-14. Sarif, however, provides no reason for *why* it disagreed with the PTAB's conclusion that element (e) was indefinite—only that it did. D.I. 132. Rather, Sarif argues that the PTAB's decision was "dicta," made without the benefit of expert testimony, and was subject to a different claim construction standard. *Id.* The fact the Patent Office's decision was not binding on this Court does not make the decision wrong, and Sarif does not point to anything in the PTAB's decision that would be different if it had offered expert testimony. Perhaps even more importantly, Sarif cannot explain how using a "presumption of validity" standard would have allowed this Court to identify a structure in the patent corresponding to element (e) when there was no structure disclosed at all. The fact that Sarif does not even attempt to point out an error in the PTAB's analysis—let alone actually cite one—only reiterates that it should have *known* its claims were improper after the PTAB's ruling.

**C.      Sarif litigated this case in an unreasonable manner.**

By changing its claim construction *five* times, Sarif presented a constantly moving target designed to hide the stark conflict between element (e) and the description of the invention in the '725 patent. This is unreasonable litigation conduct by any standard.

**1.      Sarif did not "refine" its construction of element (e); it changed it substantively at least five times.**

Sarif argues that "[e]ven though Sarif's construction ultimately did not prevail under the new *Williamson* standard, Sarif should not be penalized for its continuing efforts to put its best foot forward in our adversarial system of justice."   Opp. Brief, p. 16. As discussed above, the *Williamson* case did not change any aspect of the law regarding the construction of element (e). Regardless, Sarif should be penalized for its continuing "refinements" of its construction for element (e).

As explained in Brainlab's opening brief, the construction that Sarif advocated before the PTAB did not include cameras at all. Its later constructions before this Court did. Sarif's construction in the Joint Claim Construction Chart included the Step 2 algorithm described in the patent, but did not include the algorithm that Sarif advocated before the PTAB. In its answering claim construction brief, Sarif then added the notion that element (e) required the "active" positioning of the tool. D.I. 79, p. 5. According to Sarif, that meant that "'determining' is actually used here in its active sense of directing the movements and positioning the tool."   *Id*. Although Sarif argues in its Opposition that it has not dropped this assertion, "active," "directing" or "positioning" did not appear in the construction of element (e) Sarif advocated at the claim construction hearing.

Lastly, as proof that its "refinements" of element (e) were reasonable, Sarif argues that the Court rejected its claim construction "only after Brainlab's Notice of Supplemental Authority

regarding the intervening *Williamson* decision." Opp. Brief, p. 17. Again, not quite true. As discussed above, while the Court did cite to *Williamson* regarding element (d)(3), the Court did not rely on *Williamson* with respect to its discussion of element (e).

### 2. Sarif's decision not to file an appeal confirms that its case was without merit.

Sarif lauds its decision not to appeal this case. But Sarif's attempt to use its decision not to pursue an appeal now is not evidence of past reasonable conduct in this litigation. Sarif claims that after the Court's claim construction decision it "reexamine[d] this litigation and ma[d]e an objective assessment of the validity of Sarif's claims" and thus conceded invalidity. Opp. Brief, p. 20. It hardly had a choice. Not only was element (e) indefinite, but the Court found that element (d)(3) was as well. Unfortunately, element (e) of claim 1 has been invalid since the patent issued just as the PTAB found a year ago without regard to the *Williamson* case. There is simply no reasonable explanation for Sarif pursuing this objectively meritless case through claim construction, and Sarif's decision now not to appeal a lawsuit that it dragged on needlessly is hardly worthy of praise.

## III.   CONCLUSION

Element (e) of claim 1 is unsupported by the specification of the '725 patent, and Sarif admits this Court properly determined to that claim to be indefinite. A legitimate pre-filing investigation would have revealed this error in the '725 patent, and certainly any analysis following the PTAB decision would have revealed the same. Rather than perform that analysis (or perhaps in spite of performing it), Sarif attempted to press claims that required such a tortured reading of its patent that it could not support its claim construction for element (e) after five different tries. Worse, none of that mattered to Sarif. All that mattered was keeping this case

alive long enough to coerce Brainlab into a settlement—indeed, that is the only way Marathon could have been "pleased" that the PTAB invalidated a patent it just bought.

If Sarif had an earnest basis to show its construction for element (e) was reasonable, it would have offered it.  Sarif still refuses to offer any reasonable explanation, choosing to hide behind the specter of a purported pre-filing investigation while refusing to disclose it. Sarif also attempts to twist an argument about a different claim element and an inapplicable case into something that passes as reasonable diligence. Sarif's case was without merit when it was brought, and it has been litigated in an unreasonable manner until Sarif had no option but dismissal. The fact that this devil-may-care attitude permeates its defense to an award of attorney fees only reinforces that Sarif's conduct should be sanctioned to prevent this brand of litigation in the future.  Sarif's actions throughout this case are not ordinary, acceptable, or zealous advocacy—they were exceptional. Brainlab should therefore be awarded its attorney fees under § 285.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Maryellen Noreika
_____
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mnoreika@mnat.com

*Attorneys for Brainlab Inc.,*
*Brainlab AG and Brainlab Medizinische*
*Computersysteme GmbH*

OF COUNSEL:

Jay R. Campbell
Joshua M. Ryland
TUCKER ELLIS LLP
950 Main Ave., Suite 1100
Cleveland, OH 44113
(216) 696-5639

November 16, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 16, 2015, upon the following in the manner indicated:

Richard D. Kirk, Esquire                                          *VIA ELECTRONIC MAIL*
Stephen B. Brauerman, Esquire
Vanessa R. Tiradentes, Esquire
Sara E. Bussiere, Esquire
BAYARD, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE  19801
*Attorneys for Plaintiff*

Marc A. Fenster, Esquire                                          *VIA ELECTRONIC MAIL*
Jeffrey Z.Y. Liao, Esquire
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025-1031
*Attorneys for Plaintiff*

Mary B. Graham, Esquire                                          *VIA ELECTRONIC MAIL*
Jeremy A. Tigan, Esquire
Stephen J. Kraftschik, Esquire
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
*Attorneys for Varian Medical Systems, Inc.*

Joseph Greco, Esquire
Alfredo A. Bismonte, Esquire
Kimberly P. Zapata, Esquire
Jeremy M. Duggan, Esquire
BECK, BISMONTE & FINLEY, LLP
150 Almaden Boulevard, 10th Floor
San Jose, CA 95113
*Attorneys for Varian Medical Systems, Inc.*

*VIA ELECTRONIC MAIL*

*/s/ Maryellen Noreika*

Maryellen Noreika (#3208)