## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SARIF BIOMEDICAL LLC,      :
     :
      Plaintiff,      :
     :
      v.      :     C.A. No. 13-846-LPS
     :
BRAINLAB, INC.; BRAINLAB AG;      :
BRAINLAB MEDIZINISHE      :
COMPUTERSYSTEME GMBH;      :
VARIAN MEDICAL SYSTEMS, INC.,      :
     :
      Defendants.      :

## MEMORANDUM ORDER

At Wilmington this **27th** day of **September, 2016**:

Having reviewed the parties' briefing and other materials (D.I. 129, 130, 131-134) related

to the motion for attorney fees filed by Defendants Brainlab, Inc., Brainlab AG, Brainlab

Medizinische Computersysteme GMBH, and Varian Medical Systems, Inc. ("Defendants"), **IT**

**IS HEREBY ORDERED** that Defendants' motion (D.I. 129) is **DENIED** for the reasons stated

below.

1.      Plaintiff Sarif Biomedical LLC ("Plaintiff") sued Defendants for infringement of

U.S. Patent No. 5,755,725 ("the '725 patent") in May 2013.  (D.I. 1)  The '725 patent relates to

an apparatus for and methods of performing computer-assisted microsurgery.  In May 2014,

Defendants petitioned for *inter partes* review ("IPR") of the '725 patent.  (D.I. 62 at 1)  In

November 2014, the Patent Trial and Appeal Board of the United States Patent and Trademark

Office ("PTAB") instituted IPR for the method claims 10 and 11, but declined to institute IPR for

1

the apparatus claims 1-9 because it believed the apparatus claims to be indefinite.  (D.I. 62-1 at

12, 19-20)  Plaintiff subsequently admitted that claims 10 and 11 were invalid, ending the IPR,

(D.I. 130 at 9), but continued to assert claims 1-9 in this Court.  The Court held a claim

construction hearing in March 2015.  (D.I. 121)  In August 2015, the Court found all of the

claims invalid for indefiniteness.  (D.I. 125, 126)  The parties stipulated to a final judgment of

invalidity and noninfringement on October 1, 2015.  (D.I. 127)  On October 19, 2015,

Defendants moved for attorney fees.  (D.I. 129)

       2.     In "exceptional" cases, a Court may award "reasonable attorney fees" to the

"prevailing party" in a patent case.  35 U.S.C. § 285.  Federal Circuit law applies when

interpreting and applying § 285.  *See Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1032

(Fed. Cir. 2006).  The Supreme Court has held that an "exceptional" case is "one that stands out

from others with respect to the substantive strength of a party's litigating position (considering

both the governing law and the facts of the case) or the unreasonable manner in which the case

was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756

(2014).  Ultimately, the Court must make a discretionary decision based on the totality of

circumstances.  *See id.*  A party moving for attorney fees must demonstrate, by a preponderance

of the evidence, that a case is "exceptional."  *Id.* at 1758.

       3.     At the broadest level, following *Octane Fitness*, the Court may appropriately ask

(as part of the totality of the circumstances inquiry) whether it believes this is a case that should

not have been filed or, once filed, should have been litigated differently by the non-prevailing

party.  Here, even assuming that Defendants are the "prevailing" parties in this case – a

conclusion the Court need not and does not reach, because Defendants' motions fail on the basis

2

that the instant case is not "exceptional" – the Court finds no basis to conclude that this case should not have been brought.

4.      Defendants argue that this case is exceptional both because of its substantive weakness and because of the unreasonable manner in which Plaintiff litigated it.  These positions turn largely on claim construction.  Defendants contend that the term "means for determining coordinates of the tool . . . based on data from the image data base" (which appears in independent claim 1 and therefore dependent claims 2-9) is obviously indefinite because the specification of the '725 patent does not disclose a structure corresponding to the function of determining coordinates *using data from an image database*.  (D.I. 130 at 7-8)  In its claim construction order, the Court agreed that such a structure is not disclosed, finding that "there is no clear structural link for . . . [using] the image database to determine the coordinates of the tool – which is the disclosed function."  (D.I. 125 at 23)  According to Defendants, there is no legitimate argument that the specification contains a structure corresponding to the claimed function, and Plaintiff's efforts to argue to the contrary suggest that Plaintiff did not perform a "legitimate pre-filing investigation."  (D.I. 130 at 16)  Defendants further contend that, even if Plaintiff initially believed that the '725 patent's specification contained structure corresponding to the claimed function, the PTAB's finding of indefiniteness should have made clear that there was none.  (*Id.* at 17, 23)  Defendants note that Plaintiff repeatedly changed its claim construction positions throughout the litigation, offering constructions that, Defendants believe, convey inconsistent views about how the patented invention works.  (D.I. 11-15)  According to Defendants, these shifting and internally-inconsistent constructions signal both the substantive weakness of Plaintiff's case and Plaintiff's unreasonable approach to litigating it.  (*Id.*)

3

Defendants further suggest that, taken together with the fact that Plaintiff filed and settled several other lawsuits around the same time, the Court may infer that Plaintiff brought this suit based not on a reasonable belief that Defendants infringed its patent, but rather as part of a "predatory strategy to extract a nuisance settlement." (D.I. 22)

5.      With regard to the substantive strength of Plaintiff's case, the Court finds that Plaintiff had a good faith, though ultimately incorrect, belief that its claims were not indefinite. At each stage of litigation, Plaintiff provided detailed arguments, grounded in the intrinsic evidence, in support of its proposed constructions. Plaintiff also obtained expert opinion which supported its constructions.[1] The Court did not find any of Plaintiff's positions or expert witnesses to be unusually weak, and Defendants' briefing on this motion has not persuaded the Court otherwise.

6.      The Court is also unpersuaded that Plaintiff's conduct following the PTAB proceeding constituted an unreasonable approach to litigation or demonstrates that Plaintiff's case was extraordinarily weak. It is not unusual for a party to refine and revise its claim construction positions over the course of litigation. It can also be reasonable for a party to propose different constructions in PTAB and District Court proceedings, as the PTAB must give claim terms their "broadest reasonable construction," whereas District Courts give them the meaning they would have to a "person of ordinary skill in the art at the time of the invention." *Cuozzo Speed Techs., LLC v. Lee*, 2016 WL 3369425, at *10 (U.S. June 20, 2016). It can also be reasonable for a patentee which believes in the validity of its claims to revise, clarify, or refine its

---

[1]Both parties' experts testified live at the claim construction hearing. (*See* D.I. 121 at 6-38, 88-100)

claim construction strategy in light of a PTAB opinion that the claims are indefinite.

7.      The subject matter at issue in the patent claims involved here is complex, and the proceedings before this Court involved construction of several terms in the asserted claims. Because Defendants have not shown that, as a whole, Plaintiff's claim construction arguments before this Court are inconsistent with those Plaintiff took before the PTAB, Plaintiff's modifications to its positions, while substantial, do not strike the Court as evidence that Plaintiff's case was extraordinarily weak. The Court does not conclude that it was unreasonable for Plaintiff to continue litigating this case in light of the need to revise its positions.

8.      Defendants' additional "evidence" does not persuade the Court of the substantive weakness of Plaintiff's case. First, the fact that a prior owner of the '725 patent declined to assert the patent in litigation does not indicate that either the prior owner or Plaintiff believed the patent to be invalid. Second, Defendants have not demonstrated that this is a "nuisance suit." Plaintiff's status as a non-practicing entity, the language of press releases directed toward its investors, its decision to allege infringement against several other entities, and its decision to settle other cases, do not combine to establish that this case was always "meritless" or "predatory."

9.      As long as the test for awarding attorney fees turns on whether the case is "exceptional," the Court is obligated to consider the instant case in comparison to the full panoply of patent cases with which it has been involved, and needs to assess if the instant case is in some meaningful sense "uncommon," "rare," or "not ordinary." *Octane Fitness*, 134 S. Ct. at 1756. Having undertaken this analysis, the Court concludes that nothing about the instant case stands out as "exceptional" in any respect, including the substantive strength of Plaintiff's

5

unsuccessful positions or the manner in which Plaintiff litigated the case. Accordingly, the Court

exercises its discretion to deny Defendants' request for attorney fees.

HON. LEONARD P. STARK
UNITED STATES DISTRICT JUDGE